Good morning, ladies and gentlemen. We'd like to welcome our participants, of course, and our guests here this morning. Our first case of the morning is 118581, People of the State of Illinois v. Terry Hood. Are you ready to proceed? Ready? Good morning, your honors. May it please the court, my name is Assistant State Attorney Iris Ferrosi, and I'm here on behalf of the People. Your honors, this case is before you today because of an evidence deposition that was taken of Mr. Robert Bishop. Now, the People requested this evidence deposition of Mr. Bishop due to the traumatic brain injury that he suffered at the hands of the defendant. The defendant pleaded guilty to the crime and is now in a state of emergency. So the People anticipated that we may need to preserve his evidence for trial and do an evidence deposition. So when we motioned the court to do this evidence deposition, in the motion, we were ready, willing, and able to have the defendant present for this deposition at the nursing home where the victim resided. And after filing it, the defendant, his counsel, excuse me, waived his presence. And at the deposition, however, his counsel was present and a thorough cross-examination was done of Mr. Bishop, who, if you've watched the DVD, was very limited in his ability to speak. Ms. Berosi, though, does the record at all indicate whether the defendant himself chose not to attend or even knew about the deposition? The record indicates, Your Honor, that the defendant was present when the People filed their motion and asked for this deposition. There is no waiver by the defendant on the record, only by his counsel, which was done six months after the deposition. His counsel put on the record that she was waiving his presence. The prosecutor made statements that could lead one to believe that they were off-the-record discussions, that defendant and his counsel did not wish to be there. But there was no written waiver procured from the defendant. However, when this, after taking the deposition and six months later after the defendant put his objection on the record, another three years passed and the state was ready to go to trial on this case and wanted to use this evidence deposition at trial because Mr. Bishop's state had deteriorated considerably. We actually put on a medical professional that said as much, that over the last three years his ability to speak had gone way down. He could no longer take care of himself in any way. So we asked to have it admitted at trial. At that point, the defendant did not object to his absence at the deposition, but rather to the admissibility of the DVD based on the unavailability of Mr. Bishop. And that is why we did the hearing. Because of his physical condition, you think that's enough to get around People v. Loftin? Well, Your Honor, actually People v. Loftin, in that case, this court was able to actually look at the record. And as you know, there was a 11510 hearing where the defendant was not present. His counsel said, I didn't have him brought over. I didn't even bring him over. So they did the 11510 motion with the victim and her mother without the defendant's presence. The next day at trial, the victim's mother testified as to the victim's potential of lying and her motive to lie about the entire case. It was a sexual assault case. And this court could look at the record and say that his absence actually made a difference. Had he been present at the 11510 hearing, he could have added this motive to lie, which clearly came from him. And that whole, all those hearsay statements of the victim would have probably been rendered inadmissible, thus changing the total outcome of his trial. We don't have that here. Here, the defendant has never shown how his absence at the deposition would have changed a thing. You're speaking about prejudice here, but taking a step back, just so we're clear, what is the state's position here? Can defense counsel waive the right of the defendant to be present at the evidence deposition, or is this a personal right of the defendant? What's the state's position? Our position, Your Honor, is that this case illustrates the importance of a defendant to object contemporaneously. Because defendant's lack of objecting now puts the appellate court in this position to look at it only under second-pronged plain error. The defense counsel here said that defense counsel waived the defendant's presence. Yes. Can the defense counsel do that? The defense counsel cannot waive right to presence. However, that error, if you can, if that is even a clear error in this case, that error alone doesn't automatically go right to second-pronged plain error. And as this court has said in Glasper, akin to structural error. This court has held that if a defendant's counsel waives his client's presence at a critical stage in the trial, that it doesn't end there. The defendant has to show prejudice at that point, because it's a due process clause violation. He has to show prejudice. Would his presence have changed anything? And again, back to Loftin. You could look at that. His defendant doesn't even argue prejudice, does he? He never argues prejudice. And, Your Honor, he didn't argue prejudice to the appellate court, first-pronged plain error, likely because he wouldn't have gotten the results that he wanted. Because the evidence here was not closely balanced in any way. He is arguing first-pronged plain error today in his opening brief, or excuse me, his brief, but he has never argued it in the past. And let me stress again that had he objected at trial, this purported error would have been subject to a harmless error standard. Counsel, the defense counsel waived his presence. And isn't this at a critical stage for the due process right to be present for the purpose of just being at the deposition? Isn't that a due process right? It is, but even if his counsel erred in waiving his presence and he didn't waive it, that doesn't end there. He has to show, defendant has to show that his presence would have made a difference. And he's never shown that. And that's because Mr. Bishop was thoroughly cross-examined. There's only so much Mr. Bishop could say. He said he was hit over the head with a hammer by the defendant and that's the last thing he remembered. Defendant's counsel questioned him extensively on how many times he spoke to the prosecutor before the evidence deposition. And every line of cross-examination was covered. And, again, it was the defendant's burden to show how he would have made a difference. And he has never argued that and has never been able to show that. You know, is your argument that Crawford silently overruled the holdings in Coy and Craig, requiring an individual showing a public policy necessity? No, no, no, no. That is not what we are arguing. We are not trying to carve out a necessity exception here. In Coy and Craig, the defendant was precluded from being present. There was a closed-caption TV and an actual screen between the defendant and the victim in those two cases. We have never argued that this defendant should have been precluded. Like I stated, we did everything we could to get him there. The court order that's in the record shows that we wanted him transported from the jail to the evidence deposition. And then on the order, it's crossed out and it says, over defendant's objection. And then the entire portion was crossed out where we were going to have him brought over. So that is why our position is the error is not clear that he didn't waive his presence because the record seems to suggest there was an off-record conversation that he did not wish to be present. But that's speculation, isn't it? Well, based on the record, our position is he can't meet his burden that he did not waive his presence there. And even if he did, it's not subject to second-pronged plain error, as the appellate court held. Second-pronged plain error is akin to structural error, so it's very limited. And there has to be such a pervasive error that it affects the trial from beginning to end. His absence at this deposition did not affect the trial from beginning to end, and he's never even alleged that. The appellate court went right from these three errors, the Sixth Amendment and the right to presence and the Rule 414, and those three made a per se reversal under second-pronged plain error without considering whether they were akin to structural errors. Could you address Rule 414? Obviously, this court has adopted a rule to avoid this problem. Yes. To put everything in writing so the record is clear as to what the defendant's personal choice is here. Here, clearly no one raised the process under 414. So what do we do with that? What do we do with that kind of error? Well, under Glasper, that was a rule error. As this court knows, the rule is not in and of itself a constitutional right. It is a rule to protect the constitutional right. And under Glasper, it was a rule error. And this court said that it still would be determined under harmless error. In that case, the defendant tried to say it's per se error, and we go right to second-pronged plain error. But this court rejected that, saying, no, it's a trial error. And a trial error usually falls under a harmless error standard. And if it falls under a harmless error standard, had the defendant objected, he shouldn't be allowed to argue a second-pronged plain error because he failed to object. Because that gives him a windfall for not objecting. And this court has said time and time again the importance of objecting. Had he objected, the court would have cured it, either gotten the written waiver, had another deposition, or had the court said, you know, forget it, you got your deposition. This would have been determined under harmless error in the appellate court. So the defendant's failure to object is what got us here. And his failure to object does not entitle him to second-pronged plain error because he can't, like I said, under the Lofton case, he can't show his trial was fundamentally unfair because Mr. Bishop was thoroughly cross-examined. He talked about his ability to recall events. And the failure to tender a piece of paper didn't in and of itself render the trial unfair. The defendant has never shown that. I might add, too, Your Honors, that the appellate court found plain error under Rule 414. This was something that the defendant never raised in his opening brief to the appellate court. We raised it and said, this is also a Rule 414 error. And then defendant said in his reply brief, we're not concerned with that. We're not, that's not our claim. Rule 414 error is not our claim. So the appellate court also erred by granting him relief on something that he didn't claim and therefore never had to show plain error. He never had to prove it, which is his burden. Are you really arguing invited error? Not arguing invited error, but that the appellate court should not consider a claim that was not raised by the defendant and reversed under second-pronged plain error. Because that absolved him from his burden of showing that the Rule 414 violation was second-pronged plain error. He never had to show it. And it's almost like the appellate court took these three things and added them together and said, that's so substantial, even though it's one error. But they took three together and said, that's plain error. But if you have three errors that always amount to harmless error, then in the end you're still going to have harmless error. You're not going to have a prejudice standard. You're not going to have second-pronged plain error. And even under first prong, this defendant would fail because the evidence was not closely balanced. Taking aside Mr. Bishop's DVD, we also had evidence from a neighbor who heard the defendant's voice, was able to identify it, scolding the victim, saying, I'm going to get you. And then a defendant made a third-party admission after the fact, admitting to tying up, gagging, and slitting the throat of Mr. Bishop and hitting him over the head, saying he would have killed him if he could. So we also had that evidence plus DNA evidence that put the defendant on the scene, his blood on a bludgeon. So if we did this on a prejudice standard at the appellate court, the defendant would have failed, but he didn't argue that because of a good reason. He would have not prevailed on that. So we would ask this court to please consider all our arguments in our brief and reverse the appellate court's ruling of reversing the defendant's conviction. You've already indicated that this is not the kind of waiver that counsel can do. It intrigues me, though, that defense counsel objected to the entry of the order to have him brought over and then actually said, don't bring him over, I think, and didn't want him there. Could this be considered akin to a trial strategy by the counsel not to have the defendant confronted by it or the witness confronted by the defendant outside of the trial to confirm an identification? And if so, is there any argument that this is the type of a trial strategy that belongs to defense counsel as opposed to the defendant? Your Honor, I believe I would be speculating if I said it was a trial strategy. I don't know if the record clearly indicates that. I mean, I think it could be. And the fact that he never objected and then when it came to trial and this piece of evidence was going to be admitted, he didn't object based on his absence. This was over the course of three years. And like I said, the doctor testified that Mr. Bishop's brain capacity declined over those three years. Had he immediately objected, they could have redone the evidence deposition with his presence there. But whether it was trial strategy, I mean, these two men knew each other, that would be just me speculating. It's not clear from the record. So, again, based on my argument today and arguments in my brief, I would ask that this Court reverse the appellate court's ruling and reinstate the defendant's conviction. Thank you. Thank you very much. Good morning, Your Honor. Sean O'Toole. May it please the Court. The State had one eyewitness in this case. The witness provided his testimony in an evidence deposition outside the presence of the defendant. Therefore, the defendant was unable to participate in cross-examination of the witness, provide potential lines of inquiry, or look upon the witness who was accusing him of the charged offense. And the witness did not have to look upon Mr. Hood when making that accusation. This deposition was admitted at Mr. Hood's trial and became the linchpin of the State's case. Absent a valid waiver, the admission of such a deposition, taken outside of Hood's presence, violated three separate legal principles. Hood's right to face-to-face confrontation under the Sixth Amendment, the due process right to be present at a critical stage, and this Court's Rule 414. Under each and every one of these theories, clear error occurred, and given the importance of these rights and the importance of this witness, the error constitutes plain error under either prong. First, the admission of this deposition violated Hood's right to confront witnesses face-to-face under the Sixth Amendment. The United States Supreme Court, in Coy v. Iowa, said that the Confrontation Clause contains two rights, the right to cross-examination and the right to face-to-face confrontation. This case involves the latter, which the Court described as the core right of the Confrontation Clause. The Court said it has never done... Mr. O'Toole, on the plain error, prong to plain error, the errors that we typically recognize are those that infect or taint the entire process. The proceeding as a whole, I think, is what opposing counsel called it. You know, example, biased jury or judge, an attorney with a conflict of interest, severely defective jury instructions. This would be something typically called a trial error, wouldn't it? Well, in People v. Herron, this Court said that plain error occurs when the violation is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. In Coy, the United States Supreme Court said that the absence of face-to-face confrontation affects the integrity of the judicial process and the fairness of the trial. So that language in Coy involving face-to-face confrontation tracks the language in Herron. The idea that only structural error equals plain error is not borne out by this Court's precedent. This Court has found second-pronged plain error in a variety of circumstances, including prosecutorial misconduct, failure to grant a continuance, one act, one crime, a whole host of cases where this Court has never found those errors to be second-pronged plain error. I'm sorry, structural error. In Thompson, this Court said that it equated plain error with structural error because it used the language essential to the integrity of the judicial process. Under that theory, this error also must be considered plain error because the Coy Court said the violation of face-to-face confrontation affects the fairness of the judicial process. The Court explained in Coy why that is so. It talked about centuries of history of acknowledging that requiring a defendant and a witness to face each other at trial, the fairness of the truth-seeking process is enhanced. And by requiring the defendant to be present for cross-examination, the defendant is able to observe the demeanor of the witness, aid cross-examination by suggesting lines of inquiry, and it makes it much less likely that the witness will be able to lie, and if the witness does choose to lie, he does it less convincingly. So this is an error that is essential to the judicial process, the integrity of the judicial process, and that is the type of error that amounts to second-pronged plain error. So is every violation of the right to confront a witness so serious that it denies the defendant a fair trial? This Court has found a confrontation violation in a much less serious context, people v. Lucas, to amount to second-pronged plain error. But I know this Court has also held that not every constitutional error arises as second-pronged plain error. But I would note that the seriousness of the error in this case, which involves the absence of the defendant from the witness of the sole eyewitness, the deposition of the sole eyewitness who is his accuser, I believe would always be second-pronged plain error. What are we to make of or how does the fact that there was no objection and defense counsel said I told him not to bring him, how does that factor into the analysis, if at all? Well, the question of whether there's a valid waiver operates in a couple different ways. For purposes of the Confrontation Clause, Hood maintains that there's not been a valid waiver because constitutional waivers must be knowing and voluntary. There must be an intentional relinquishment of a known right. The record in this case, as Justice Burke pointed out, shows that there was never any indication that Hood knew of this right or that he waived it personally. Without something in the record indicating that Hood was aware of the right, there can't be a valid waiver. Now, the state makes this acquiescence argument. It says that by failing to object personally, the defendant acquiesced in the error. But the state cites no authority for this proposition. When I pointed out in my brief that the state had not cited any authority in support of this proposition, it persisted in its reply brief in making this argument. It did not address the forfeiture argument and did not, again, cite any authority. And the reason for that is clear because the United States Supreme Court in Johnson v. Serbs said this court will not presume acquiescence in the loss of constitutional rights. So the acquiescence argument can be rejected both on procedural and substantive grounds. Now, the state now argues that counsel can waive the confrontation violation in its reply brief. But here I believe the state has now conceded that counsel can't, again. In its opening brief, it conceded that counsel cannot waive the defendant's right to be present for live testimony. That authority comes from this court's line of critical stage cases, including Peeble v. Bean, where this court explicitly held that the defense counsel has no power to waive. May I go back to plain error for a moment? Can you reconcile the Patterson case, Peeble v. Patterson, in which this court said that a Crawford error could be reviewed as harmless error? Now, I understand that there, as you point out in your brief, there was an objection. It was litigated. The court ruled. The court was wrong in its ruling, et cetera. But if, in fact, a Crawford violation is harmless, how could we say here that this error is prejudicial in Second Prong? Well, the question of harmless error is separate from the question of Second Prong plain error. The state makes this argument that it's less fair to the state, because if the defendant had preserved this error, it would be able to show harmlessness. But the standard is harmless beyond a reasonable doubt. And the standard is not whether Hood's presence at the deposition would have changed anything, because the Coy v. Iowa tells us that would be too speculative. The question is whether the introduction of a deposition that was taken outside of his presence would have changed the trial. Under the harmless beyond a reasonable doubt standard, the state would have never been able to prove that. And it doesn't argue that it could. Now, with Second Prong plain error, the question becomes, is the error serious? And I would argue that, unlike Crawford, where there's not a complete deprivation of face-to-face confrontation, and I believe in the Patterson case it was not the accuser, you could make the argument that the error is not serious. But where the error does involve the accuser and is a complete deprivation of face-to-face confrontation, there's no question that the error becomes serious. But the state argues that, for example, in the Patterson case, there's an objection made, arguments were made, litigate, you know, whatever. The issue is aired out, and the court made a ruling. And then the reviewing courts could review that. And ultimately this court said that kind of error, in that case the Crawford error, was harmless. So we're going to look at the weight of the evidence. The state argues here there was no objection. That's true. But had there been an objection, the court could have dealt with it. The issue could have been resolved right then. Why would it be so much more serious in this situation where we know something could have happened had the objection been raised earlier? Well, as this court's precedent has shown and people will be hearing, when there's a second-pronged plain error, this court presumes prejudice. Because this court has already found, and the defendant has the burden, and that's the big distinction. When the error is preserved, the state has the burden of proving the error harmless. When the error is not preserved, the defendant has the burden. And so here Terry Hood has the burden of proving that this was a serious error. And at that point, under the second prong, the court presumes prejudice. So it's really a distinction that maybe on the surface seems unfair to the state, but I think if Patterson involved the accuser, it would have been reversed as well. And also I'd point out that in People v. Stewart, where the defendant was absent from the 11510 hearing, this court found second-pronged plain error, even though the defendant was able to cross-examine that witness and was able to confront the witness at trial, because the defendant's absence from the hearing bore a substantial relationship to his ability to defend himself. Here we know from Coy that the defendant's absence from live testimony, not just testimony for a 115 hearing, but testimony that was the testimony that was admitted at trial, does in fact bear on the defendant's ability to defend himself and therefore is second-pronged plain error under Stewart. Finally, this court could also reverse under Rule 414, because as the state concedes, there was no written waiver in this case. Rule 414E, in the committee comments, says that the rule was designed to protect the defendant's confrontation rights. And going back to this question of whether the error was forfeited or not, or whether an objection would have saved us all from being here, this court should send a message that its rules should be followed so that this doesn't happen again. Rule 414E is clear. The defendant and the defense attorney have the right to be present. The defendant must waive that right in writing. So while the state cites Thompson for the proposition that rule violations aren't second-pronged plain error, this court in Thompson said that the 431B admonishment error in that case did not deprive the defendant of the right to a fair trial, because the defendant couldn't show that the rule violation resulted in a biased jury. This case is distinguishable. The Rule 414 violation did result in the violation of a constitutional right. You have argued that the trial court had an obligation to admonish the defendant. Where does that obligation come from? Well, 414E, with the written waiver requirement, which, again, this court said is designed to protect the rights of confrontation, assuming there's a written waiver, that written waiver will satisfy the admonishment requirement. My point with regard to admonishments is that constitutional rights must be knowingly waived. So there can't be a valid waiver if there is not also a formal informing of the defendant of those rights. But the rule itself does not require that, the language of the rule. Right. The rule doesn't require admonishments, but I think that's inherent in a written waiver. A written waiver will advise the defendant, or at least show that the defendant understands that he has this right to be there, and that by signing the waiver, he's giving up those known rights. So I think the better practice, the best practice in these cases, is for the trial court to get this on the record. But assuming there had been a written waiver in this case, I don't think I could have made this argument before this court. The State has argued that counsel extensively cross-examined the victim witness at the deposition, and that you haven't alleged or shown any prejudice by the defendant not being there. And I think you said a moment ago that you don't need to show prejudice in that. Prejudice to the defendant is the introduction of the deposition. Is that your position? It doesn't matter whether it made any difference that he would be there or not? Well, as the court in Coy v. Iowa specifically stated, it would be completely speculative to assume that the defendant's presence would have altered that proceeding. The court drew upon the centuries of evidence that a defendant's presence could have affected that outcome, but it did not require the defendant to show that the presence would have. So when it remanded for a harmlessness analysis, it said, take out that evidence that was entered in violation of the Constitutional Confrontation Clause, and then evaluate the remainder of the evidence. And that's the only prejudice analysis that is allowed in these types of errors. I would also note that in Peeble v. Lofton, where the defendant and the witness were separated by a podium, this court found a violation of the rights of face-to-face confrontation. And when it came to, quote-unquote, prejudice, which the court did not find the need to find before reversing, it simply said, defendant's presence might have affected the outcome, might have affected the witness's testimony. If there's face-to-face confrontation, there's a possibility that it could have changed. And that's really all you can say in these types of cases. Now, for purposes of the first prong, which I am arguing also today, the question is whether that deposition tipped the scales against the defendant in a closely balanced case. And because of the importance of this deposition to the trial, him being the only eyewitness, the only person to claim to have seen Terry Hood in that room, in light of that, it's clear that the scales would have been tipped by this deposition. In fact, Mr. Hood was acquitted on three of the four counts, showing how closely balanced the evidence was. And while the state points to DNA evidence in this case, there's also evidence that Terry Hood lived in that apartment for some time. And with regard to the voice recognition testimony, defense counsel severely impeached that witness by showing that that witness did not say that he heard Terry Hood's voice until long after the fact and did not mention it on the night of the offense. And finally, with the supposed admission to Byron Williams, that witness was also impeached. The defense attorney was able to show that that witness owed Mr. Hood money and that his description of what Mr. Hood said did not match what occurred to Mr. Bishop, specifically the idea that Mr. Bishop was thrown in the closet. So under either prong, this court can find plein air. Under the Confrontation Clause violation, which again, the state, while in its opening brief, argued that this might not have been a Confrontation Clause violation because there was cross-examination, has abandoned that argument in its reply brief and now admits the defendant had a Confrontation right under the Confrontation Clause to be there. I understand your speculation argument with respect to what would have occurred if the defendant was present, but that was his right. His right was to be present. His right wasn't to stop the deposition. The deposition would have gone forward either, in this case, as it did, without his presence or with his presence. So how can we then look at merely the fact that it took place, which it was going to take place anyway, in determining whether or not the defendant was prejudiced? Well, again, you presume prejudice because it took place in the defendant's absence. Had the defendant objected, obviously he would have been taken there. So we don't look at things such as what type of cross-examination went on by his counsel or anything like that? Coy makes clear that the right of cross-examination is completely separate from the right to face-to-face confrontation. No question. But, I mean, I'm talking about the cross-examination in light of looking at that for your prejudice analysis rather than merely it took place, which it was going to take place anyway. Well, again, this Court presumes prejudice under the second prong. In Stewart, the case where the defendant was absent from the 11510 hearing, this Court, once it found the due process violation of the right to be present at a critical stage, then found second prong plainer just by virtue of the fact that it was a constitutional violation. So I don't think the prejudice analysis can be done based on what would have happened had the defendant been there. And this makes it all the more important for this Court to send a message to trial courts, because had this all taken place before the deposition, that they could have either gotten the defendant's waiver or they could have made the arrangements, as the State has indicated that it was willing to make, and get the defendant to the deposition. And then, you know, the deposition would have happened, the defendant would have been there, and who knows how Mr. Bishop would have reacted. Maybe Mr. Bishop would have said, hey, I thought it was Terry Hood, but it's not that guy. Or, you know, maybe Mr. Bishop would have changed his mind in some other way. Maybe Mr. Hood had ways to help his defense attorney poke holes in what Mr. Bishop was saying. So, you know, I can speculate as to the prejudice, but COI says not to do that. So my time is up, unless this Court has any further questions. Thank you, counsel. I ask this Court to affirm the appellate court. Thank you. Excuse me. May it please the Court. What the defendant is asking you to do is to expand second prompt claim error to those things that are not structural error or akin to structural error, just to send a message. And would like this Court to ignore the message that you've already wanted to send a defendant to object a trial. You have ruled that repeatedly. This necessity to object would have solved this issue, and we would not be here today. And what the defendant would like you to do is to send a message and say that any constitutional error is second prompt claim error. And might I add that the case the defendant is repeatedly relying on, COI and Craig, the defendant objected in those cases. The defendant objected in those cases. They were not subject to plain error. And we have a totally different situation here where the defendant sat by while this happened and said nothing, even when this was coming in to evidence, didn't object, on the grounds of his absence, and only waited until the appellate court to object, therefore giving him a better position by not objecting than had he objected. What would be the motivation for a defendant to object? If he can just sit by and not object, go to the appellate court and say, hey, this is a constitutional violation. I get a new trial. I don't have to show that this is akin to structural error. I can just say this is an important witness, so I get a new trial. This court has never taken witnesses apart and said these are important, these are not, and that affects the fairness of a trial. In fact, in Patterson, this is a witness testifying against him. These are witnesses testifying against a defendant. And the importance of this witness can be gauged against the other witnesses. That is why a prejudice standard is the appropriate standard, because we can look at it and say, hey, we can weigh this with the other ones. If it were a true second-pronged plain error, akin to structural error, you can't do that because the prejudice is assumed from the beginning to the end, like a right to not having a counsel of your choice to being denied a jury trial. It's automatically prejudice. And we can't look at this and say that because we can look at the other evidence. That is the difference here. Now, this case comes down to, at worst, the admission of inadmissible hearsay. That's worst-case scenario, that this inadmissible hearsay came into trial. This court has ruled that that would be a trial error. That is subject to harmless error. These three things that the appellate court is lumping together and making structural error, those are all trial errors. And a rule violation is a trial error. And to send a message to any defendant that if the rule is not followed, you get an automatic reversal on second-pronged plain error, again, what is the point of objecting? He would never object. He would hope nobody notices and then he can get to the appellate court and he gets a new trial. And that is exactly what happened here. He never objected. The importance of the objection would have changed this whole case. And as far as our acquiescence argument that the defendant is claiming that we have waived, that was, as you can see in my brief, that was simply laying out the facts of what happened in this case and how a defendant just kind of sat idly by while this case was proceeding. He had no problem filing motions complaining about his lawyer. He had no problem doing that. But he never complained about this. Violation or no, none of these violations fall under second-pronged plain error. Therefore, we would ask that you reverse the appellate court and reinstate his conviction. Thank you very much. Thank you. Case number 118581, People of the State of Illinois v. Terry Hood, will be taken under advisement as agenda number one. Ms. Ferrosi and Mr. O'Toole, thank you for your arguments this morning. You're excused at this time.